IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH JENNINGS,        Plaintiff | : : : | |
| | : | No. 1:22-cv-00019 |
| v. | : : | |
| | : | (Judge Kane) |
| CLINTON COUNTY, et al.,        Defendants | : : : | |

## MEMORANDUM

On January 4, 2022, pro se Plaintiff Keith Jennings ("Jennings") initiated the above-captioned case by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 against Clinton County, Pennsylvania ("Clinton County"), Aramark Correctional Services, LLC ("Aramark"),[1] and three John Doe Defendants. (Doc. No. 1.) Presently before the Court are motions to dismiss the complaint filed by Defendants Clinton County and Aramark. (Doc. Nos. 23-24.) For the following reasons, the motions will be granted in part and denied in part.

## I.   BACKGROUND

According to the allegations in the complaint, Jennings, who suffers from diabetes, was detained in the Clinton County Correctional Facility ("CCCF") from January 25, 2021 to December 14, 2021. (Doc. No. 1 at 2-3.) Jennings and members of CCCF's medical staff purportedly made several requests to Defendants Clinton County and Aramark[2] for Jennings to receive a low-carbohydrate diet to help treat his diabetes. (Id. at 4-5.) The complaint alleges that, contrary to these requests, Jennings received a high-carbohydrate diet. (Id. at 3.) This high-carbohydrate diet purportedly led Jennings to experience high blood sugar levels "well over 100"

---

[1] This Defendant is erroneously identified as "Aramark Corporation" in the complaint.

[2] Aramark is identified in the complaint as a corporation providing meals to inmates in CCCF through a contract with the facility. (Doc. No. 2 at 2.)

milligrams per deciliter and occasionally as high as 250 milligrams per deciliter. (Id. at 4.)³ Jennings allegedly experienced numerous adverse symptoms as a result of his elevated blood sugar levels, including headaches, tingling in his toes, side aches, frequent urination, and blurred vision. (Id.) His uncontrolled diabetes also allegedly placed him at risk of serious harm, including loss of life or limb, heart disease, nerve damage, vision impairment, and decreased renal function. (Id.) The complaint alleges that Defendants were aware of Jennings's diabetes and his need for a low-carbohydrate diet as a result of the requests made by him and the jail's medical staff but were deliberately indifferent to the risks posed by Jennings's diabetes. (Id. at 6.) The complaint further alleges that Clinton County and Aramark maintained a policy of not providing low-carbohydrate meals to diabetic inmates, even when such diets were requested or medically necessary. (Id.) Jennings seeks compensatory and punitive damages. (Id. at 10.)

The named Defendants moved to dismiss the complaint on May 26, 2022. (Doc. Nos. 23-24.) Clinton County seeks dismissal on the following grounds: (1) Jennings failed to exhaust administrative remedies; (2) the complaint fails to state a deliberate indifference claim upon which relief may be granted; (3) Jennings does not allege a policy or custom that could support a claim of municipal liability against the county; (4) Jennings fails to allege the personal involvement of any of the John Doe Defendants; and (5) punitive damages are not available against a municipality. (Doc. No. 25.) Aramark seeks dismissal on the following grounds: (1) Jennings fails to state a deliberate indifference claim; (2) Jennings failed to exhaust

---

³ The complaint specifically alleges that "Plaintiff experienced abnormally high blood sugar levels well over 100 and sometimes reaching 250's" but does not specify the unit of measurement to which these numbers refer. (Id.) The Court takes judicial notice that blood sugar levels are commonly measured in milligrams per deciliter, see, e.g., Diabetes Tests, CDC, https://www.cdc.gov/diabetes/basics/getting-tested.html (last visited Jan. 17, 2023), and liberally construes the complaint as referring to milligrams per deciliter.

administrative remedies; (3) Jennings has not sufficiently alleged a policy or custom by which Aramark could be held liable for his claims; (4) Aramark is entitled to qualified immunity; and (5) there is no basis for punitive damages. (Doc. No. 26.) Jennings has not responded to either motion, and the deadline for doing so has expired under the Local Rules. The motions are accordingly ripe for disposition.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "where the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Pro se complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle, 429 U.S. at 106).

B.  **Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id. "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

III.  **DISCUSSION**

A.  **Defendants' Motions to Dismiss**

At the outset, the Court finds Defendants' arguments that the complaint should be dismissed for failure to exhaust administrative remedies unavailing. Under the Prison Litigation Reform Act ("PLRA"), a prisoner complaining about the conditions of his confinement must exhaust available administrative remedies before he may file suit in federal court. See 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning that a plaintiff must administratively grieve his complaint in accordance with the procedural rules imposed by the

prison in which the prisoner is incarcerated.  See Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)).  "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff."  Small v. Camden Cnty., 728 F.3d 265, 268 (3d Cir. 2013) (citing Jones v. Bock, 549 U.S. 199, 212, 216-17 (2007)).  Defendants argue that dismissal for failure to exhaust is appropriate, but they offer nothing beyond Jennings's failure to plead exhaustion to establish that he failed to exhaust administrative remedies.  See (Doc. No. 25 at 11; Doc. No. 26 at 15-16).  Thus, they have not met their burden to establish failure to exhaust, as plaintiffs are not required to plead exhaustion of administrative remedies.  See Small, 728 F.3d at 268.

Turning to the merits of the complaint, civil rights claims under § 1983 against a municipality such as Clinton County may proceed only if the alleged civil rights violation was caused by a municipal policy or custom.  See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978); Baloga v. Pittson Area Sch. Dist., 927 F.3d 742, 761 (3d Cir. 2019).  Similarly, claims against a corporation providing services to a prison through a contractual arrangement must allege that the corporation had a policy or custom that caused the alleged civil rights violation.  See Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017); Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  Here, Jennings alleges that Clinton County and Aramark had a policy to not provide low-carbohydrate meals to diabetic inmates even when medically necessary and that this policy caused CCCF and Aramark employees to be deliberately indifferent to Jennings's diabetes.  (Doc. No. 1 at 6.)  The court finds these allegations sufficient to state § 1983 claims against Clinton County and Aramark.

In addition, the Court finds Aramark's assertion of qualified immunity unavailing.  "[M]unicipalities have no immunity from damages liability flowing from their constitutional

violations." Hynson ex rel. Hynson v. City of Chester, 827 F.2d 932, 934 (3d Cir. 1987) (quoting Owen v. City of Independence, 445 U.S. 622, 657 (1980). It follows that Aramark, as a contractor performing duties on behalf of Clinton County, is not entitled to qualified immunity. Clinton County cannot confer immunity to Aramark by way of a contract that it would not have if it performed Aramark's duties.

As for the claims against the John Doe Defendants, the Court agrees with the moving Defendants that dismissal of these claims is appropriate for failure to state a claim upon which relief may be granted. The complaint makes no allegations as to how the John Doe Defendants were personally involved in the alleged civil rights violations. See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 289 (3d Cir. 2018) (noting that defendant must be personally involved in alleged civil rights violation to be held liable under Section 1983).

Finally, with regard to punitive damages, the Court will dismiss Jennings's punitive damages claim against Clinton County because municipalities are immune from punitive damages under § 1983. See City of Newport v. Fact Concerns, Inc., 453 U.S. 247, 271 (1981). Jennings's punitive damages claim against Aramark will be allowed to proceed, however, because the allegations in the complaint are sufficient to allege callous or reckless indifference to Jennings's civil rights. See Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000) (noting that a jury may award punitive damages in a civil rights case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").

B.     **Leave to Amend**

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a complaint that is merely deficient. See

7

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.

    Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to permit Jennings to file an amended complaint that corrects the deficiencies identified herein with regard to his claims against the individual defendants.  Jennings is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Jennings's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that Jennings claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.  If Jennings does not file an amended complaint, the original complaint will remain the operative pleading and the case will proceed as to Jennings's claims against Clinton County and Aramark only.

## IV. CONCLUSION

    For the foregoing reasons, the Court will grant in part and deny in part Defendants' motions to dismiss and grant Plaintiff leave to file an amended complaint.  An appropriate Order follows.